# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| **RAHUL JINDAL,** | * | |
| *Plaintiff,* | | |
| | * | |
| | | Case No.: 21-884PWG |
| **v.** | * | |
| | | |
| **LLOYD J. AUSTIN, III,** *et al.*, | * | |
| *Defendants.* | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Pending before me is a Motion to Dismiss filed by Lloyd F. Austin, United States Secretary of Defense; Uniformed Services University Health Services ("USU"); and Walter Reed National Military Medical Center ("Walter Reed") (collectively, "Defendants"). ECF 21, MTD. The Defendants' Motion is fully briefed at ECF 21, ECF 22, and ECF 25. I have reviewed the parties' filings and find that no hearing is necessary. *See* Local Rule 105.6. For the reasons outlined in this Memorandum Opinion, Defendants' Motion to Dismiss is GRANTED.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Rahul Jindal filed his Amended Complaint in this action on April 12, 2021. ECF 5, Amend. Compl. In it, Dr. Jindal asserts a single cause of action against his former employers[1] for Retaliation for Whistleblowing under the Whistleblower Protection Act ("WPA"). 5 U.S.C. §§ 2302(b)(8) and 2302(b)(9). Dr. Jindal's 22-page Amended Complaint contains many detailed

---

[1] Because USU and Walter Reed are both overseen by the Department of the Defense, Secretary Lloyd is also named as a Defendant.

factual allegations about the specific events that led him to file his retaliation claim under the WPA. Amended Complaint ¶¶ 1–141. Because the Defendants move to dismiss purely on jurisdictional grounds, a brief summary of those facts will suffice to provide the necessary context.

Dr. Jindal began working at USU as a professor of surgery in 2008, during which time he was jointly employed by USU and Walter Reed, where he had surgical privileges. *Id.* ¶ 11– 2. During his tenure at USU and Walter Reed, Dr. Jindal twice filed complaints about colleagues to the Maryland Board of Physicians under the pseudonym "John Lyndsay." *Id.* ¶¶ 37, 75. First, on February 11, 2014, Dr. Jindal filed a complaint against Dr. Hawksworth based on complaints made by one of Dr. Jindal's former patients, who allegedly told Dr. Jindal that Dr. Hawksworth had failed to inform her of the risks of surgery. *Id.* ¶¶ 33–37, 124. Then, on September 12, 2017, Dr. Jindal filed a complaint against Dr. Ottmann, the former head of transplant surgery at Walter Reed, alleging "that Dr. Ottmann had been fired from facilities in Rochester, New York and Harrisburg, Pennsylvania at which he had worked as a locum tenens physician," "that Dr. Ottmann had been asked not to return to Georgetown University Hospital and University of Maryland Hospitals where he did *pro bono* work," and finally that Dr. Ottman had engaged in "inappropriate and discriminatory interactions with staff at Walter Reed" and other facilities. *Id.* ¶¶ 72–74. Dr. Jindal also alleges that Drs. Ottmann and Hawksworth created a hostile and intimidating work environment for Dr. Jindal personally, including by making repeated racist remarks regarding Indian physicians. *Id.* ¶¶ 16, 45, 122.

On April 27, 2018, USU and Walter Reed received a communication from Dr. Ottmann's lawyer which informed them that the reports made by "John Lyndsay" to the Maryland Board of Physicians had in fact been made by Dr. Jindal. *Id.* ¶¶ 76–77. Dr. Ottman's lawyer also claimed that Dr. Jindal had violated HIPAA by sending patient information to the Board of Physicians

without permission. *Id*. USU's Office of the Inspector General then launched a months-long investigation into Dr. Jindal's conduct. *Id.* ¶ 79. The Office of the Inspector General concluded in a report released on October 19, 2018 that Dr. Jindal had filed false reports to the Board of Physicians regarding Drs. Hawksworth and Ottmann. *Id.* ¶ 80. The following month, Walter Reed "sent Dr, Jindal a letter stating that his privileges had expired" but that due to USU's findings, Walter Reed intended to "conduct its own investigation before renewing Dr. Jindal's privileges." *Id.* ¶ 85. Walter Reed suspended Dr. Jindal's privileges pending the outcome of its investigation, which ultimately concluded: (1) that the allegations that Dr. Jindal violated HIPAA and misled a federal agency were unsubstantiated; (2) that there were no clinical or patient care related issues with Dr. Jindal's practice; and (3) that "the allegations regarding the filing of a false complaint [were] substantiated," but within USU's jurisdiction. *Id.* ¶¶ 92–95. Walter Reed did not restore Dr. Jindal's surgical privileges. *Id.* 96–97. And because he lacked surgical privileges, USU terminated Dr. Jindal's employment. *Id.* ¶ 112; Opp. at 5.

On December 17, 2020, Walter Reed held a Hearing Panel, which concluded that Dr. Jindal had "behaved in a manner unbecoming of a federal employee and inconsistent with continued practice at [Walter Reed]."Amend. Compl. ¶ 120. The Panel recommended that "Dr. Jindal's [Walter Reed] credentials should be permanently revoked and Dr. Jindal should be removed from all patient care duties." *Id.* Dr. Jindal was notified of the final decision to revoke his privileges on February 26, 2021. *Id.* ¶ 140.

Dr. Jindal filed an Individual Right of Appeal to the Merit Systems Protection Board ("MSPB Appeal") on or about February 5, 2021. *Id.* ¶ 8. On or about February 22, 2021, the Defendants filed a motion to dismiss Dr. Jindal's appeal. *Id.* ¶ 9. The Defendants argued that the MSPB Administrative Judge to whom the case was assigned "lacked the authority to decide [the]

appeal based on the U.S. Supreme Court's Opinion in *Lucia v. Securities Exchange Commission*, 138 S. Ct. 2044 (2018)," which held that certain administrative judges are "inferior officers" within the meaning of the Appointments Clause of the U.S. Constitution, and must therefore be appointed and confirmed in accordance therewith. *Id.*; MTD at 7. At the time of Dr. Jindal's MSPB Appeal, the "dispositive issue" of *Lucia's* applicability to MSPB Administrative Judges was "pending before the Board from an Interlocutory Appeal." ECF 21-2, AJ Initial Decision at 2. Accordingly, the Administrative Judge concluded that there was "good cause to dismiss [Dr. Jindal's] appeal without prejudice to allow a newly confirmed Board to address this issue." *Id.* at 3. The MSPB issued an Initial Decision dismissing Dr. Jindal's MSPB Appeal on February 26, 2021. *Id.* The Initial Decision provided that Dr. Jindal's Appeal would "**be automatically refiled by the Board on February 25, 2022[,]**" and that if the Board reached a decision regarding the application of *Lucia* prior to that that date, the Appeal would be refiled at that time. *Id.* at 3 (emphasis in original).

Dr. Jindal filed this action on April 7, 2021. ECF 1, Complaint. His Amended Complaint asserts a single cause of action against the Defendants for "Retaliation for Whistleblowing" in violation of §§ 2302(b)(8) and 2302(b)(9) of the WPA. *See generally* Amend. Compl. Specifically, Dr. Jindal alleges that he engaged in protected whistleblowing activity under §§ 2302(b)(8) and 2302(b)(9) of the WPA when he filed complaints with the Maryland Board of Physicians regarding Drs. Hawksworth and Ottman, and that USU and Walter Reed unlawfully retaliated against Dr. Jindal by suspending his privileges and terminating his employment. *Id.* ¶¶ 143–44. The Defendants filed their Motion to Dismiss the Amended Complaint on August 18, 2021. MTD.

Additional facts will be provided below as needed.

**STANDARD OF REVIEW**

The Defendants move to dismiss this action for want of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion asserts that a plaintiff "lacks any right to be in the district court at all." *Criscione v. U.S. Nuclear Regulatory Commission*, 493 F. Supp. 3d 423, 428 (D. Md. 2020) (quoting *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012)). The district courts should grant Rule 12(b)(1) motions "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Balfour Beatty Infrastructure, Inv. v. Mayor & City Council of Baltimore*, 855 F.3d 247, 251 (4th Cir. 2017). The burden of establishing that an action falls within this Court's subject matter jurisdiction rests with the plaintiff. *Criscione*, 493 F. Supp. 3d at 428.

**DISCUSSION**

The Defendants argue that this case should be dismissed because this Court lacks subject matter jurisdiction to hear Dr. Jindal's claims. MTD at 2. Specifically, the Defendants argue that Dr. Jindal failed to exhaust his administrative remedies, and, furthermore, that he filed his judicial complaint in the wrong court. *Id.* Dr. Jindal counters that he in fact has exhausted his administrative remedies, and that his claims are justiciable in this Court. ECF 22, Opp. at 6–11.

The WPA provides an avenue for relief for federal employees who, like Dr. Jindal, allege that their employers have taken retaliatory action against them as a result of protected whistleblowing activity. *See generally* 5 U.S.C. § 2302(b)(8)–(9). The WPA provides a specific procedural avenue for those seeking relief. And although the process has been described as "complicated" and "at times confusing," "federal courts have been strict in keeping whistleblowing plaintiffs on the proper procedural pathway." *Gammill v. U.S. Dep't of Education*, 989 F.Supp.2d 118, 121 (D.D.C. 2013) (quoting *Kloeckner v. Solis*, 568 U.S. 41, 49 (2012)).

"An employee, former employee, or applicant for employment may, with respect to any personnel action taken, or proposed to be taken, against such employee . . . as a result of a prohibited personnel practice . . . seek corrective action from the Merit Systems Protection Board." 5 U.S.C. § 1221(a). From there, the relevant statutes provide different avenues for judicial review depending on whether or not the specific case includes claims for discrimination under the Civil Rights Act, Fair Labor Standards Act, Rehabilitation Act, or Age Discrimination in Employment Act. *Compare* 5 U.S.C. § 7702 *with* 5 U.S.C. § 7703. In cases like Dr. Jindal's that do not assert claims for discrimination prohibited by the enumerated statutes, judicial review is available after the MSPB issues a "final order or decision" that is adverse to employee seeking relief. 5 U.S.C. § 7703(a). A claimant must exhaust their administrative remedies prior to seeking judicial review, which only occurs when the MSPB has issued a final decision. 5 C.F.R. § 1201.113 ("Administrative remedies are exhausted when a decision becomes final in accordance with this section.").

The Parties in this case dispute whether Dr. Jindal has exhausted his administrative remedies. Their dispute arises out of the potential application of the U.S. Supreme Court's 2018 decision in *Lucia v. SEC* to the MSPB and its administrative judges. 138 S.Ct. at 2044. In *Lucia*, the SEC charged the appellant under the Investment Advisers Act and assigned an administrative law judge ("ALJ") to adjudicate the case. *Id.* at 2049–50. The ALJ concluded that Mr. Lucia had violated the laws as alleged, and imposed sanctions against him. *Id.* at 2050. Mr. Lucia appealed the ALJ's decision to the SEC and argued that the findings against him were invalid because the presiding ALJ had not been appointed in accordance with the Appointments Clause of the U.S. Constitution, which requires "Officers of the United States" to be appointed by the President, "Courts of Law," or "Heads of Departments." *Id.* The Supreme Court agreed with Mr. Lucia,

concluding that SEC ALJs were "Officers of the United States" subject to the Appointments Clause, and remanded his case to be decided by a properly appointed ALJ. *Id.* at 2051–55.

It is not clear at this juncture whether the *Lucia* decision subjects MSPB's Administrative Judges to the requirements of the Appointments Clause. As explained in the MSPB's Initial Decision dismissing Dr. Jindal's claims, the "issue of whether the Court's holding in *Lucia* is applicable to Board Administrative Judges (AJs) is pending before the [MSPB] from an Interlocutory Appeal certified on April 23, 2019." Initial Decision at 2. The problem is that the MSPB has lacked a quorum for five years, and with no one to make a decision regarding the dispositive application of *Lucia*, cases like Dr. Jindal's have been at a standstill, through no fault of the employee seeking relief.

Dr. Jindal argues that because the MSPB has been rendered "impotent due to the lack of quorum," he has done all he can do to seek administrative relief, and has therefore exhausted his administrative remedies, notwithstanding the fact that his claim before the MSPB was dismissed without prejudice and subject to automatic refiling. Opp. at 7–9. Dr. Jindal has a point, and I sympathize with his position. However, MSPB regulations make clear that administrative exhaustion has a specific meaning that differs from that advanced by Dr. Jindal. And because courts have concluded that administrative exhaustion is a jurisdictional prerequisite in this context, I am not empowered to hear Dr. Jindal's case unless his administrative remedies are exhausted under that definition. *See, e.g., Ashe v. Price*, No. CV PJM 16-3423, 2017 WL 3172776, at *6 (D. Md. July 26, 2017) ("because his claims have not yet been resolved by the MSPB, Ashe has not exhausted his administrative remedies, and his WPA claims must be dismissed for lack of subject matter jurisdiction."); *Stella v. Mineta*, 284 F.3d 135, 142 (D.C. Cir. 2002) ("Under no

circumstances does the WPA grant the District Court jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance.").

Administrative remedies in the MSPB are exhausted only when the MSPB has issued a "final decision." 5 C.F.R. § 1201.113(e). The MSPB regulations explain that "if the Board . . . dismisses a case, the decision of the Board is final if it disposes of the entire action." 5 C.F.R. § 1201.113(c). Courts addressing exhaustion in the MSPB confirm that this definition is controlling. In *Schoenrogge v. Dep't of Just.*, 385 F. App'x 996, 998 (Fed. Cir. 2010), the Court of Appeals for the Federal Circuit, which formerly had exclusive jurisdiction over appeals from non-discrimination based MSPB decisions, explained that courts lack jurisdiction over appeals from the MSPB absent a final decision within the meaning of the MSPB regulations:

> We do not reach the merits for we agree with the government that we lack jurisdiction over this appeal under 28 U.S.C. § 1295(a)(9).[2] Our jurisdiction under 28 U.S.C. § 1295(a)(9) extends only to appeals from a final order or a final decision of the Board. We have held that the final judgment rule applies to appeals from the MSPB, and that under the Board's regulations, "[i]f the Board grants a petition for review or a cross petition for review, or reopens or dismisses a case, the decision of the Board is final *if it disposes of the entire action.*" The Supreme Court has consistently held that as a general rule an order is final only when it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. Where a decision of the Board requires that the agency conduct further proceedings, we have held that such a decision is not final for jurisdictional purposes as it does not "leave nothing for the court to do but execute the judgment" and does not "dispose of the entire action."

*Id.* (emphasis in original) (quoting *Weed v. Soc. Sec. Admin.*, 571 F.3d 1359, 1361–62 (Fed. Cir. 2009).

---

[2] This statute formerly granted the Court of Appeals for the Federal Circuit exclusive jurisdiction over non-discrimination based MSPB appeals. *See Afifi v. U.S. Dep't of Interior,* 924 F.2d 61, 62 (4th Cir. 1991) ("When it created the Federal Circuit, Congress vested the court with exclusive jurisdiction to hear appeals from final orders of the MSPB in federal personnel matters.") Jurisdiction to hear those appeals has since expanded to include other appellate courts of competent jurisdiction under § 7703.

Plainly, the MSPB's Initial Decision in this case does not constitute a "final decision."[3] The Initial Decision does not reach the merits of Dr. Jindal's claims, and it expressly provides for further proceedings before the MSPB, which are to be initiated automatically. Initial Decision at 3. Far from disposing of the entire action, the MSPB has, in Dr. Jindal's own words, "effectively stayed [Dr.] Jindal's case indefinitely," which does not meet the requirements for administrative exhaustion under the relevant statutes. Opp. at 7. Accordingly, I must dismiss Dr. Jindal's Amended Complaint because he has not exhausted his administrative remedies.

Furthermore, even if Dr. Jindal *had* exhausted his administrative remedies before the MSPB, I would still lack subject matter jurisdiction over this case. Throughout his Opposition, Dr. Jindal cites to 5 U.S.C. § 7702 as creating a path for judicial review in this Court. *See* Opp. at 7–10. Section 7702 outlines the parameters for judicial review of actions that involve claims of discrimination under certain enumerated statutes, *see Kloeckner*, 568 U.S. at 44, and gives the District Courts subject matter jurisdiction to review WPA actions involving those claims. *Bonds v. Leavitt*, 629 F.3d 369, 379 (4th Cir. 2011). But as Dr. Jindal acknowledges, Opp. at 10, this case does not involve a claim of discrimination, so § 7702 is not applicable. *See Clark v. Brown*, 536 F. Supp. 3d 56, 63 (E.D. Va. 2021) (distinguishing between judicial review under § 7702 and § 7703 and concluding that a claim under § 7702 was reviewable in the District Court, notwithstanding *Lucia*.).

Conversely, § 7703, which does apply to Dr. Jindal's case, states that a petition "to review a final order or final decision of the [MSPB]" that does not include any allegations of discrimination, "shall be filed in the United States Court of Appeals for the Federal Circuit or any

---

[3] Indeed, Dr. Jindal acknowledges as much in his Opposition, *see* Opposition at 8–9.

court of appeals of competent jurisdiction." 5 U.S.C. § 7703(b). In other words, the Federal Circuit Courts have subject matter jurisdiction over non-discrimination based final decisions from the MSPB under § 7703 — Federal District Courts do not. *See, e.g., Ashe v. Price*, 2017 WL 3172776, at *6 ("Moreover, because § 7703, not § 7702, applies, the Court lacks subject matter jurisdiction over Ashe's WPA claims because he has filed his Complaint in the wrong court.").[4] Accordingly, because Dr. Jindal has filed his Amended Complaint in a court that lacks subject matter jurisdiction, the Defendants' Motion to Dismiss must be granted.

It is lamentable that circumstances entirely beyond Dr. Jindal's control have left him in limbo with respect to his WPA claims. I note, however, that after years of stagnancy, the MSPB finally regained a quorum via the appointment and confirmation of two new members on March 1, 2022. *See* Latest News and Significant Actions, U.S. Merit Systems Protection Board (March 3, 2022, 2:48 PM), https://www.mspb.gov/index.htm. ("Vice Chairman Raymond Limon and Member Tristan Leavitt were confirmed by the Senate on March 1, 2022."). Hopefully, the newly confirmed members will soon issue a decision regarding *Lucia*'s application to Administrative Judges in the MSPB and allow Dr. Jindal's case to progress in the appropriate forum. And although I am bound to grant the Defendants' Motion to Dismiss for lack for jurisdiction, the dismissal is

---

[4]  *See also Bunce v. Computer Scis. Corp.*, 113 F. Supp. 3d 234, 237 (D.D.C. 2015) ("Even if Mr. Bunce was entitled to the protection of the WPA, the D.C. Circuit has consistently held that federal district courts lack jurisdiction over whistleblower claims brought under the WPA. This Court is bound by the statutory limits on its jurisdiction and finds it does not have subject-matter jurisdiction over this case.") (citations omitted); *DeSantis v. Napolitano*, 716 F. Supp. 2d 1100, 1113 (D.N.M. 2010) ("The Court concludes that it lacks jurisdiction over DeSantis' appeal of his WPA claim. Appeals of MSPB Final Orders that do not include claims of unlawful discrimination can be filed only in the Federal Circuit."); *Gammill v. U.S. Dep't of Educ.*, 989 F. Supp. 2d 118, 121 (D.D.C. 2013) ("WPA cases that include at least one employment discrimination claim—so-called 'mixed' cases—may be brought in federal district court. On the other hand, 'pure' WPA cases may only be reviewed by the courts of appeals. ").

without prejudice to Dr. Jindal's rights to seek judicial review in the appropriate court when MSPB eventually issues a final decision regarding his claims.

## CONCLUSION

For the reasons outlined in this Memorandum Opinion, the Defendants' Motion to Dismiss for lack of subject matter jurisdiction is GRANTED.

## ORDER

For the reasons outlined in the foregoing Memorandum Opinion, the Defendants' Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) is GRANTED without prejudice to Plaintiff's right to future appeal of the final decision of the MSPB in the appropriate forum.

DATED this 8th day of March, 2022             \_\_\_\_/S/_____
                                              Paul W. Grimm
                                              United States District Judge